Lucien W. Rolland and Xenia M. Rolland, Husband and Wife v. Commissioner.
Rolland v. Commissioner
Docket No. 67386.
United States Tax Court
T.C. Memo 1959-161; 1959 Tax Ct. Memo LEXIS 87; 18 T.C.M. (CCH) 702; T.C.M. (RIA) 59161; August 19, 1959
*87 Held, upon the evidence that expenditures for maintenance of parade horses are not deductible as ordinary and necessary business expenses. Held, further, upon the evidence, that the bulk of expenditures in connection with Mardi Gras activities are not deductible as ordinary and necessary business expenses, but that some of them are deductible. Held, further, that deductible expenses of operation of an apartment building include those attributable to one apartment occupied rent-free, where evidence shows that the occupant rendered services in consideration of the rent-free use of the apartment. Hilary J. Gaudin, Esq., and W. M. Stephenson, Esq., for the petitioners. Roy E. Graham, Esq., for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined deficiencies in income tax and an addition to tax as follows: Addition to Tax
Year
Income Tax
Section 294(d)(2)
Fiscal Year Ended Oct. 31, 1953
$1,736.16
$68.13
Fiscal Year Ended Oct. 31, 1954
1,594.65
Taxable Period Nov. 1, 1954 to Dec.
31, 1954
44.24
Calendar Year 1955
993.50
The issues are: (1) whether the petitioners are entitled to deduct Mardi Gras expenses as ordinary and necessary business expenses for the *89 fiscal years ended October 31, 1953 and October 31, 1954, and the calendar year 1955; (2) whether for each taxable year and period the petitioners are entitled to deduct either as business expense or charitable contributions the cost of maintaining parade horses; (3) whether for the fiscal years ended October 31, 1953 and 1954 and the taxable period the respondent properly computed the net income or net loss from operation of an apartment building; and (4) whether the petitioners are entitled to deduct interest of $682.27 for the fiscal year ended October 31, 1953. Findings of Fact The petitioners are husband and wife, residing in New Orleans, Louisiana. Their joint Federal income tax returns for the taxable years and period in question were filed with the collector of internal revenue at New Orleans. The petitioner Lucien W. Rolland will be referred to hereinafter as the petitioner. During the years in question the petitioner and his former wife, Elizabeth K. Rolland, each owned a one-half interest in the partnership, Rolland Safe and Lock Company, in New Orleans. The petitioner had been in the safe, lock, and key business for 35 or 40 years. There are two other safe and lock *90 companies in New Orleans. The petitioner and his former wife were divorced in 1949. In that year they entered into a community property settlement agreement, which was filed in the record of the Civil District Court for the Parish of Orleans. The property, including the lock and key business, was divided between them. It was agreed that the petitioner should continue to conduct that business as in the past, but that each party should be responsible for his or her own personal bills or obligations, and that such personal obligations should not be paid by the business. During the years in question the petitioner participated in various Mardi Gras activities, which are held each year. There are about 65 carnival organizations in New Orleans, which hold annual balls in the Mardi Gras season. Many of the businessmen of the city of New Orleans belonged to these organizations. Prior to 1946 the petitioner did not participate in Mardi Gras affairs because he was too busy, his two sons having gone into the military service and hence having been lost to his business. In 1946 the petitioner joined four or five of these carnival organizations. About 1951 he was a member of about 10 such organizations *91 to which he paid yearly dues, and was active in them until 1957. During that period he was semi-retired. In 1957 he dropped his membership in all except three and went back to work actively in his business. These carnival organizations allotted to each member a number of invitations to the balls held each year. These invitations are given to others by the members. In 1953 the petitioner sent out approximately 200 such invitations. Some of these were sent to petitioner's customers or prospective customers. The petitioner would have his employees call the people whom he wished to invite and they would come to petitioner's place of business and obtain the invitations. The petitioner acted as "King" and "Duke" in several of these organizations. He had to give favors in the form of beads or necklaces to his court. In addition he did certain entertaining and gave tips to waiters. The petitioner has three married daughters. Neither they nor his wife were in any of the carnival organizations, and none of them acted as "Maid" or "Queen" of any of the organizations. The petitioner has been a member of the Mounted Escort of the Shriners for about 12 years. The Shriners is a social organization *92 connected with the Masonic Order. It conducts parades at various places for the benefit of hospitals for crippled children. The petitioner has owned parade horses since about 1948. During the years in question he owned four such horses which he kept in a stable at his home. These horses had cost about $400 or $500 each. He kept these horses for the purpose of entering them in various parades. They have participated in parades in which the Mounted Escort of the Shriners has participated. There are also five parades each year in connection with the Mardi Gras carnival balls. He has on occasions ridden these horses himself, but on other occasions he has loaned the horses to others who wanted to ride in parades. In 1953 the petitioner's horses were entered in three shows or parades, namely, the Spring Fiesta, the March of Dimes parade, and the Night in Old New Orleans. The petitioner does not recall whether he, himself, rode the horses in any of those affairs. When a horse is entered in a show in the Spring Fiesta, which is a charitable horse show, the program shows the name of the rider, but does not show the name of the owner. In their joint income tax return for the fiscal year ended *93 October 31, 1953, the petitioners reported $9,347.91 as their share of income from the partnership, income from rentals of $5,791.60, net income of $3,508.84, and a tax liability of $380.42 (which includes self-employment tax). In such return the petitioners claimed as "Partnership Expenses not included in Partnership" the following: Advertising - Mardi Gras
$4,456.00
Feed for Parade Horses
907.93
Veterinary
77.50
Supplies
239.50
Stable Expense
166.48
Shoeing
84.00
Utilities
49.04
Total
$5,980.45 In the notice of deficiency the respondent disallowed all these claimed deductions. The petitioners during the fiscal year ended October 31, 1953, expended $2,338.97 for dues and fees to Mardi Gras carnival organizations and other expenses in connection with the Mardi Gras. They expended $1,524.45 for the maintenance and upkeep of parade horses. In their joint income tax return for the fiscal year ended October 31, 1954, the petitioners reported income from the partnership of $8,119.69, income from rentals of $4,957.83, net taxable income of $3,561.49 (after claimed carryback loss), and a tax liability of $270.93 (including self-employment tax). In such return *94 the petitioners deducted "PARTNERSHIP EXPENSES NOT INCLUDED IN PARTNERSHIP" as follows: Advertising - Mardi Gras
$5,238.50
Maintenance of Parade Horses
954.75
Total
$6,193.25
In the notice of deficiency the respondent disallowed the full amount claimed. During the fiscal year ended October 31, 1954, the petitioners expended $4,437.26 in connection with Mardi Gras activities (of which $75 was for photographs, $290.55 was for jewelry, and $1,113.71 was for food, champagne, and catering). During such year they expended $750.62 for maintenance of parade horses. In addition they expended $347.87 for water and light and power, of which $87.70 was allocated, by notations on the checks, as being for maintenance of horses. In their joint return for the taxable period November 1, 1954 to December 31, 1954, the petitioners reported income from the partnership of $1,229.90, income from rentals of $812.50, net income of $927.98, and no tax liability except employment tax liability of $35.51. They claimed as "PARTNERSHIP EXPENSES NOT INCLUDED IN PARTNERSHIP" an amount of $179.69 for maintenance of parade horses. No deduction was claimed on account of Mardi Gras expenses. *95 In the notice of deficiency the respondent disallowed this claimed deduction of $179.69. During the taxable period November 1, 1954 to December 31, 1954, the petitioners expended $73.99 for maintenance of parade horses. In addition they expended $46.38 for water and light and power, on the checks in payment of which they allocated a total of $11.50 as being for maintenance of horses. In their joint income tax return for the calendar year 1955, the petitioners reported income from the partnership of $7,304.74, income from rentals of $5,949.50, net income of $7.59, and no tax liability except selfemployment tax of $126. In such return they claimed deductions as follows: Utilities - Stable
$ 109.79
Supplies & Feed - Stable
1,149.67
Labor
536.18
Advertising - Carnival
1,975.00
Total
$3,770.64 The respondent disallowed "Partnership Expenses" in the amount of $3,770.64. In the calendar year 1955 the petitioners expended $567.09, in connection with Mardi Gras activities (of which $23.18 was for photographs and $125 was for buffet dinners and drinks). In that year they paid $1,100.41 for supplies and feed, $141.50 for veterinary and hospital charges, and $84 for *96 pest control. They also paid $319.41 for water and power and light, of which they allocated on their return $109.79 to the maintenance of horses. On April 3, 1955, they also paid $45 for a water meter for the stable. Some of the expenses in connection with the Mardi Gras activities were paid by checks drawn on the bank account of the partnership, Rolland Safe and Lock Co., and some were paid by checks drawn by petitioner Xenia M. Rolland. These expenditures paid by the partnership were not treated as expense of the partnership, but were charged to the petitioner's personal drawing account. The accountant who kept the books for the partnership was instructed by the partners to treat these items in this manner because of the provisions of the community property settlement agreement referred to above. The expenditures in connection with the maintenance of horses were generally paid by checks drawn by the petitioner Xenia M. Rolland. The portion of petitioner's Mardi Gras expenditures which constituted ordinary and necessary business expense for advertisement and entertainment in the fiscal years ended October 31, 1953 and 1954 and the calendar year 1955 amounted to $450, $900 and *97 $200, respectively. During the taxable years and taxable period in question the petitioner Xenia Rolland owned an apartment house on St. Charles Avenue in New Orleans. At some time during this period extensive repair and remodeling work was done on the apartment building, including installation of bathrooms, painting, papering, building lockers, and construction of a new roof. During this period of remodeling a sister of the petitioner Xenia Rolland, who was living in one of the apartments, was permitted to occupy an apartment rent free for the purpose of directing the remodeling work and showing and renting apartments. After the apartment remodeling was completed the sister paid rent at the rate of $50 per month. Throughout the period that the sister occupied the apartment rent free the petitioners continued to deduct the full expense of operating the apartment building. In their return for the fiscal year ended October 31, 1953, the petitioners reported rental income of $5,791.60, apartment house expense of $5,884.06, and a net loss from the apartment operation of $92.46. In the notice of deficiency the respondent determined that the petitioners realized net profits from rents *98 in the amount of $1,782.35 instead of sustaining a net loss of $92.46. In their joint return for the fiscal year ended October 31, 1954, the petitioners reported rental income of $4,957.83, apartment house expenses of $2,606.09, resulting in net income from rental operations of $2,351.74. In the notice of deficiency the respondent determined that the net income from rents was in a lesser amount, namely, $2,142.96. In their joint return for the taxable period November 1, 1954 to December 31, 1954, the petitioners reported income from rent in the amount of $812.50, apartment house expenses of $2,790.69, and a net loss from the apartment operation of $1,978.19. In the notice of deficiency the respondent determined that the net loss from apartment house operations was only $688.23. During the fiscal year ended October 31, 1953, the petitioners paid $682.67 as interest on a mortgage on their personal residence. The petitioners mistakenly claimed this as a business expense. In the notice of deficiency the respondent disallowed this claimed deduction as a business expense and instead of allowing it as an itemized deduction, allowed the petitioners the standard deduction of $1,000, which *99 they had not claimed. Opinion For the taxable years and the taxable period involved the petitioners claimed deductions on account of Mardi Gras expenses and cost of maintenance of parade horses. They contend that these amounts were spent for advertising of the petitioner's lock and safe business and that they are therefore deductible as ordinary and necessary business expenses pursuant to section 23(a)(1)(A) of the Internal Revenue Code of 1939 and section 162(a) of the Internal Revenue Code of 1954, which provide for the deduction of all the ordinary and necessary expenses incurred during the taxable year in carrying on any trade or business. The respondent disallowed all the claimed deductions and accordingly the burden of proof was upon the petitioners to show not only the amount of the expenditures, but that they were of the character which are deductible under the statute. The petitioners introduced various bills and checks as well as other data, such as summaries and tabulations. There was no testimony with respect to each specific item. Some of the items are self-explanatory, but there are others which are not, and the data include some duplications. *100 We have carefully examined this mass of data and have found, as set forth in our Findings of Fact, that the petitioners have substantiated payments in lesser amounts than claimed. Section 24(a)(1) of the 1939 Code and section 262 of the 1954 Code provide, in general, that no deduction shall be allowed for personal, living or family expenses. Whether expenditures of the type here in question are deductible is primarily a question of fact. Proof is required that the purpose of the expenditures was primarily business rather than social or personal and that the taxpayer's business benefited or was intended to be benefited. The requirements that the expense must be both ordinary and necessary must be strictly complied with. James Schulz, 16 T.C. 401. Although the petitioner testified that all expenditures were made for a business purpose, we are not persuaded that this was so. In the first place, the mere entering of the parade horses in various parades or shows could not directly affect the safe and lock business which the petitioner conducted in partnership with his ex-wife. There is no showing that there was any advertising material used in connection with the parades *101 or shows which would publicize the business. It is our conclusion that no part of the cost of maintaining the horses is deductible. See James Schulz, supra.The petitioners cite Sanitary Farms Dairy, Inc., 25 T.C. 463, and Rodgers Dairy Co., 14 T.C. 66. Those cases are not in point because in each there was evidence which showed that the business was advertised and that there was a reasonable expectation that the business would benefit. Nor have the petitioners shown that their Mardi Gras activities directly advertised the safe and lock business. The petitioner's testimony was that in participating in the Mardi Gras and in the parades he expected to derive a business benefit through mixing with people and making contacts with customers and prospective customers. We have heretofore held that the mere fact that membership in social and other organizations is helpful in providing contacts and obtaining clients is not sufficient to justify deduction of expenses in connection therewith as ordinary and necessary business expenses. Louis Boehm, 35 B.T.A. 1106. We do not think that it reasonably could have been expected that the business *102 benefit would be commensurate with the amount of expenditures claimed. The amounts which the petitioners deducted as Mardi Gras expenses for the fiscal years ended October 31, 1953 and 1954 and the calendar year 1955 were in the amounts of $4,456.00, $5,238.50, and $1,975.00, respectively. The petitioner's distributive share of the net income of the partnership for those years, as reported on his return, was $9,347.91, $8,119.69, and $7,304.74, respectively. Actually, as will be noted, his share of partnership income did not increase but decreased over that period. We think the record, rather than sustaining the petitioners' contention that the expenditures were primarily for business purposes, indicates that in the main they were not. The petitioner himself testified in effect that his greatest interest in Mardi Gras affairs was when he was semi-retired and that both before and after his semiretirement he either did not engage in those activities, or engaged to only a limited extent because he was too busy in his business. Furthermore, both he and his exwife agreed that any expenditures for Mardi Gras which were paid by the partnership should not be considered as partnership expenses, *103 but rather as personal expenses, and accordingly his personal account was charged with any such expenditures which were made by the partnership. On the other hand, we think the petitioner did have some view to business benefit in making some of the Mardi Gras expenditures, through possible increases in the business of the partnership, and hence in his share of its profits. He testified that he customarily gave some of the invitations to the balls conducted by the carnival organizations to customers and prospective customers with a view to deriving some business benefit, although he could recall only a few of such customers and prospective customers; that he had his guests call at his place of business to receive the invitations; that he has some clientele which resulted from his participation in the carnival organizations, and that at some carnival functions business was transacted. The evidence shows that he did considerable entertaining in connection with Mardi Gras. Since we think there was business motive in some of the expenditures, it is incumbent upon us to fix some portion of the expenditures as being deductible as either advertising or business entertainment expense. As *104 stated in Cohan v. Commissioner (C.A. 2), 39 Fed. (2d) 540, an approximation of the deductible expense should be made, even though it may be necessary to bear heavily upon the petitioner who has the burden of proof. See James Schulz, supra, and Richard A. Sutter, 21 T.C. 170. Although from the record we cannot compute accurately the amount of expenditures made for a business purpose, we have exercised our best judgment and have made an approximation of the amounts which should be considered deductible, namely, $450, $900 and $200 for the fiscal years ended October 31, 1953 and 1954 and the calendar year 1955, respectively. Although in their pleadings the petitioners claimed that the cost of horse maintenance should be allowed as a charitable contribution, no mention is made of this contention in the briefs and we assume it is not now pressed. In any event, we fail to see any grounds for holding that expenditures for maintenance of these horses constituted contributions to a charitable organization within the meaning of section 23(o)(2) of the 1939 Code and section 170(a) of the 1954 Code. The petitioners contend that for the fiscal years ended *105 October 31, 1953 and 1954 and for the taxable period November 1, 1954 to December 31, 1954, the respondent erred in computing the net income or net loss from the operation of the apartment house owned by the petitioner Xenia Rolland, in that he disallowed a portion of the expenses in connection with the operation of the apartment house on account of the occupancy, rent free, of one of the apartments by the sister of the petitioner Xenia Rolland. The amounts which it is alleged the respondent so disallowed were $364.48, $402.13, and $214.39, respectively. This issue is not raised for the calendar year 1955. While the notice of deficiency merely shows net adjustments to reported apartment house income, and no reference is made therein to the disallowance of any claimed expense deduction because of the use of one of the apartments rent free by the sister, the petitioner's accountant testified that it was his understanding such an adjustment was made by the respondent, and on reply brief counsel for the respondent states that the claimed expenses attributable to the sister's apartment were properly disallowed and restored to petitioners' income. The respondent argues that the value *106 of the use of the apartment constituted a gratuity to Xenia Rolland's sister and that therefore any expenses in connection therewith are not deductible, citing Eugene H. Walet, Jr., 31 T.C. 461, on appeal (C.A. 5). It is the respondent's position that the petitioners have failed to meet their burden of proof of showing error in the respondent's determination. However, the petitioner testified that during the remodeling of the apartment house the sister was allowed to occupy an apartment rent free in consideration of her directing the remodeling and showing and renting apartments, and that after the remodeling was completed she was required to pay $50 per month rent. The evidence upon this issue is not as full as might be desired in that neither the petitioner Xenia Rolland nor her sister testified, and we do not have evidence of the precise period over which the remodeling work took place, the precise arrangement with the sister, and the precise duties which she performed. We see no reason, however, to doubt the testimony of the petitioner to the effect that his sister-in-law did render services in consideration of the use of the apartment. There was no evidence to *107 the contrary and this testimony was not broken down on cross-examination. We hold that the petitioners have made a prima facie showing that the apartment was furnished to the sister rent free in consideration of her rendition of services. Upon the recomputation under Rule 50 any amounts which the respondent disallowed as a deduction on account of this one apartment will be restored as deductions, limited to the amounts alleged in the petition. On brief the petitioners admit that an amount of $682.67 which they paid as interest on a mortgage on their personal residence is not a business expense, but claim that it should be allowed as an itemized deduction if it is to their advantage. It appears, in view of our holding herein, that it is to the advantage of the petitioners to take the standard deduction of $1,000 rather than the itemized deduction of $682.67. Decision will be entered under Rule 50.