George F. Wimmer and Helen E. Wimmer v. Commissioner.
Wimmer v. Commissioner
Docket No. 3903-64.
United States Tax Court
T.C. Memo 1966-184; 1966 Tax Ct. Memo LEXIS 100; 25 T.C.M. (CCH) 951; T.C.M. (RIA) 66184; August 8, 1966
Jack Trentacosta, Fenestra, Inc., Detroit, Mich., for the petitioners. Carl W. Kloepfer, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined a deficiency in petitioners' 1959 income tax in the amount of $2,567.82. Petitioners agreed to all adjustments other than the issue that is now presented as to whether they are entitled to a deduction under sections 162 or 165 of the Internal Revenue Code of 1954, [1] for amounts paid to George Summerfield *101 during 1959. Findings of Fact Some of the facts were stipulated and they are found accordingly. Petitioners, George F. and Helen E. Wimmer, are husband and wife. They live in Detroit, Michigan, and they filed their 1959 joint income tax return with the district director of internal revenue at Detroit. George F. Wimmer was the president and general manager of the Michigan Boiler and Engineering Company of Detroit. He owned approximately 60 percent of the corporation's stock and he devoted the major part of his activities to the affairs of that company. Sometime during 1959 or prior thereto Wimmer was approached by Atomic Power Development Company for prices on some equipment to be furnished and since his company could not furnish such equipment he became interested in being a manufacturer's agent to represent other manufacturing companies to supply such products. On December 15, 1959, a certificate of copartnership was filed with the Wayne County Clerk at Doeroit, Michigan, signed by George F. Wimmer and George Summerfield as the persons composing the partnership. *102 This certificate stated the copartnership was carrying on business in the City of Detroit under the "firm name and style of MIDWEST RESEARCH & DEVELOPMENT CO., Business Address 4120 West Jefferson Avenue, Detroit 9, Michigan * * *." This address was the same as the address for Michigan Boiler and Engineering Company. The name "Midwest Research & Development Co." did not appear on the door at Michigan Boiler and Engineering Company. George Summerfield maintained a business office at 3704 Cadillac Tower, Detroit, Michigan. The name "Midwest Research & Development Co." did not appear on Mr. Summerfield's office door or in the lobby where various offices were listed. During the year 1959 no books or records were maintained for Midwest Research & Development Co. No Federal partnership return of income was filed on behalf of Midwest Research & Development Co. in 1959. The activities of Midwest Research & Development Co. did not result in the receipt of any commissions or income during the year 1959. There was no telephone listing for Midwest Research & Development Co. during the year 1959. No bank account was maintained for Midwest Research & Development Co. during the year 1959. Midwest *103 Research & Development Co. held no business assets or office equipment during the year 1959. Midwest Research & Development Co. had no invoices or bills available for use in connection with that business during the year 1959. No advertising through trade journals or any other media was conducted on behalf of Midwest Research & Development Co. during the year 1959. It is stipulated that during the year 1959 Wimmer paid by check funds totaling $7,775 to George Summerfield. The amount of $7,875 was reported as a business loss in Schedule H of the petitioners' 1959 income tax return. The $100 discrepancy is not explained. Respondent disallowed the deduction stating: "[The] so-called partnership was not engaged in a trade or business during such [1959] year." Opinion The name Midwest Research & Development Co. does not sound like the name of a business that conducts a manufacturers' sales agency. However, it is petitioners' position that the business of Midwest was that of a manufacturers' sales agency whereby it would derive commission income from manufacturers it represented for the sales of the manufacturers' products. Section 162 provides for a deduction for "all the ordinary *104 and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *." Here the expenditures in 1959 are stipulated and the issue is whether they were incurred "in carrying on" an existing business. Similarly the deduction under section 165(c)(1) is limited to "losses incurred in a trade or business." In his opening statement respondent's counsel stated: "It is the position of the Respondent, however, that the deduction claimed is not allowable because the expenses constitute that type of expense which is commonly called pre-opening expenses, or those incurred preparatory to entering into business." The phrase "carrying on any trade or business" in the statute presupposes the existence of an established going business. It is respondent's position that the expenditures by Wimmer in 1959 in the form of payments to Summerfield were for an investigation with a view to entering a new business enterprise as opposed to expenditures in the conduct of an active business that year. It is, of course, well established that the expenses which one incurs in investigating and promoting a contemplated new business are not deductible under section 162. Eugene H. Walet, Jr., 31 T.C. 461, *105 affirmed per curiam 272 F. 2d 694; John F. Koons, 35 T.C. 1092. Petitioner was well aware of respondent's position that the expenditures were pre-business expenses. The notice of deficiency and the revenue agent's report attached thereto show clearly that the respondent's position from the outset was that these expenses were, as the report states, "pre-opening expenses of an unsuccessful business venture * * *." Wimmer is an experienced businessman - a corporation president with much business experience. Here we have a narrow issue and he produces nothing but self-serving, uncertain, hazy testimony which, if correct, could certainly have been corroborated by some documentary or disinterested evidence. The burden was on petitioners to show that these payments by Wimmer to Summerfield in 1959 were for Summerfield's work for a going business and not preopening expenses. The question is one of fact. Richmond Television Corporation v. United States, 345 F. 2d 901. We have the testimony of Wimmer and Summerfield that they were engaged in the business of representing various manufacturers as sales agents during the year 1959 and that the payments *106 were made for sal s activities by Summerfield. The certificate of copartnership signed by Wimmer and Summerfield on December 14, 1959 and filed with the clerk of Wayne County, Michigan, is really not documentary evidence in support of petitioners' position for the dates of Wimmer's 1959 payments to Summerfield are not shown. The indication is that they were before December 14, 1959 for both Wimmer and Summerfield found it necessary to testify that their partnership had existed before the certificate was executed or filed. This practically leaves the record with nothing but Wimmer's and Summerfield's testimony of an oral partnership in existence in 1959. And it is a strange sort of partnership that these excellent businessmen entered into. Wimmer became what his counsel called "an investor partner" and Summerfield the active salesman, and Wimmer, under the oral partnership agreement, was to assume and pay Summerfield's travel and entertainment expense and pay what Summerfield called his "salary requirement". Wimmer also said he was to pay Summerfield's salary but there was no agreement as to the "amount of salary" he was to pay Summerfield. Summerfield was not too positive about his *107 sales activities being in 1959. At one place after he had detailed certain sales activities for manufacturers, whom he said were represented by Midwest, petitioners' counsel asked: "This was all during the year, 1959?" and Summerfield answered: "I believe so, sir." There is just not a scrap of paper to indicate the existence of the business in 1959. There were no books, or letters to or from Midwest, and no records. They both testified Summerfield made oral reports to Wimmer. This vague testimony is wholly unsatisfactory. On his income tax return Wimmer did not label his payments to Summerfield as business expenses. He called them "Fees paid to George Summerfield for travel and expenses as representative relative to promotion of new marketable products." Both Wimmer and Summerfield said Midwest had no commission income in 1959 and with respect to books, Wimmer said "[We] didn't have any books, because we hadn't started any business yet." Wimmer said Midwest had no bank account or assets in 1959, and that it filed no partnership return. There were no written or letter contracts showing Midwest's representation of any manufacturer in 1959. Summerfield gave the names of four manufacturers *108 that Midwest represented that year and said: "[There] were others." Three that he named were Michigan companies and one a Detroit company. Since these men were only testifying from memory and Summerfield did not act too sure of the year, it would seem that the records or personnel of one or more of these named manufacturers would be available to show Midwest's 1959 representation if it existed that year. Petitioners introduced a somewhat ambiguous letter dated May 14, 1960 (addressed however to Midwest Research and Development Corp. in Tucson, Arizona), which seems to be mostly concerned with licensee contractors and not sales of products in the ordinary business of a manufacturer's representative. On the whole record we are convinced petitioners have not met their burden of showing the expenditures were to pay ordinary and necessary business expenses or that the expenditures constitute losses incurred in a trade or business. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩