ESTATE OF FRED A. ETOLL, SR., DECEASED, FRED A. ETOLL, JR., EXECUTOR, AND FREDA E. ETOLL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7611–76.    Filed October 26, 1982.

*George A. Roland*, for the petitioners.
*Gerald A. Thorpe*, for the respondent.

OPINION

TANNENWALD, *Chief Judge*: Respondent determined a deficiency of $7,856 in petitioners' 1973 Federal income tax. The main issue for our determination is whether accounts receivable collected by Fred A. Etoll, Sr., in 1973, constitute gross income to him in that year.

This case was submitted fully stipulated. The stipulation of facts is incorporated by this reference.

The petitioners are Freda E. Etoll and the Estate of Fred A. Etoll, Sr., represented by its executor, Fred A. Etoll, Jr. At the time the petition in this case was filed, Freda E. Etoll resided in Albany, N.Y., and Fred A. Etoll, Jr., resided in Columbia, S.C.

Fred A. Etoll, Sr. (Etoll), Leo J. Wagner (Wagner), and Anthony V. Farina (Farina) were partners in Fred A. Etoll & Co. (the partnership), a partnership engaged in the business of public accounting. The partnership was the successor to a partnership among the aforementioned individuals and one John De Simone (De Simone), which operated under a 1960 agreement containing a provision that all assets, including accounts receivable, would become the property of Etoll upon

the partnership's dissolution. De Simone died in 1968. A new partnership agreement among the other partners was prepared and contained a different provision in respect of the distribution of the assets upon dissolution. That agreement was never executed by Wagner and consequently never became effective. However, Etoll, Wagner, and Farina continued the business as partners.

On April 16, 1973, the partnership was dissolved. Thereafter, in 1973, Etoll collected partnership accounts receivable in the amount of $64,783.26. These funds were deposited into bank accounts from which only Etoll was authorized to make withdrawals or were used by Etoll to pay personal expenses.

On August 21, 1973, Wagner and Farina initiated an action against Etoll in the Supreme Court, Albany County, N.Y., seeking an accounting, the return of their capital contributions, and 60 percent of the remaining assets of the partnership. At issue was whether the aforementioned provision of the 1960 agreement bound the partners at the time of the 1973 dissolution.

During 1973, Etoll paid legal fees of $1,051.20 in connection with this lawsuit.

After a series of appeals, on February 17, 1978, the Supreme Court, Albany County, held that the 1960 partnership agreement was not in effect at the time of the 1973 dissolution. On March 14, 1978, judgment was entered on behalf of Wagner and Farina in the amounts of $29,218.20 and $29,706.20, respectively.

On his 1973 Federal income tax return, Etoll included only a portion of the collected receivables in his gross income. He excluded $17,045.49 as a contingency for a possible judgment in the Wagner/Farina lawsuit and $4,500 as anticipated legal fees in connection with the same suit.

Etoll was on a cash receipts and disbursements method of accounting for 1973.

Respondent contends that, in accordance with the claim of right doctrine, the entire amount of collected receivables constitutes income to petitioners in 1973. Petitioners argue that the claim of right doctrine is inapplicable to cases

involving partnership income. Apparently their position is that, based on section 702(c)[1] and the State court's determination, the 1960 agreement was no longer operative in 1973, and Etoll was entitled to only 40 percent of the receivables.[2] Petitioners also appear to contend that, in any event, Etoll was, by virtue of the State court's determination, a trustee of 60 percent of the amounts collected for Wagner and Farina.

As we see it, however one views the legal implications of the situation, respondent's determination must be sustained.[3]

If we accept respondent's contention that the amounts collected by Etoll were received by him in a nonpartner capacity as the result of the dissolution of the partnership, those amounts were clearly received under a claim of right, by virtue of the 1960 agreement, and without restriction as to their disposition. Such being the case, those amounts were clearly taxable to him in 1973; the fact that Etoll's retention and use of 60 percent of such funds may have been a violation of an implied fiduciary duty, with an attendant obligation to pay over the same to Wagner and Farina, does not negate this conclusion. *Healy v. Commissioner*, 345 U.S. 278, 282–283 (1953); *United States v. Lewis*, 340 U.S. 590, 592 (1951); *North American Oil v. Burnet*, 286 U.S. 417, 424 (1932); *Walet v. Commissioner*, 31 T.C. 461, 469 (1958), affd. per curiam 272 F.2d 694 (5th Cir. 1959). Thus, petitioners' argument based on the existence of an implied fiduciary duty falls by the wayside.

We turn to petitioners' argument that the rule which taxes partners on partnership income, whether or not distributed,

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.

Sec. 702(c) provides:

SEC. 702(c). GROSS INCOME OF A PARTNER.—In any case where it is necessary to determine the gross income of a partner for purposes of this title, such amount shall include his distributive share of the gross income of the partnership.

[2]Etoll, on his 1973 return, reported as income more than 40 percent of the receivables. On brief, petitioners contend that they may be entitled to a refund. In view of our conclusion herein, the issue of a refund (or, more accurately, an overpayment) becomes moot, but we note that petitioners did not claim any overpayment in their petition nor did they at any time seek to amend their petition to set forth any such claim.

[3]We think it appropriate to note at this juncture that it is impossible to determine from an examination of the 1973 return of Etoll and the papers relating to the action in the State court contained in the record whether Etoll's capital account in the partnership was fully taken into account by respondent in arriving at his determination. The petitioners have not made any claim that it was not, and neither the stipulation of facts nor the briefs contain any explanation of how such account was handled in the tax calculations.

entitles them to prevail. Their argument seems to be the following: (1) Etoll collected the accounts receivable on behalf of the partnership; (2) the amounts collected constituted partnership income; (3) because of the aforementioned rule, the claim of right doctrine does not apply. Accepting for purposes of discussion the first two prongs of petitioners' contention, we part company with them as to the third prong.

When a dispute arises over how much partnership income a partner is entitled to, we do not believe that section 702(c), or any other provision of subchapter K, changes the general principle that a taxpayer must include in income funds which he acquires under a claim of right and without restriction as to their disposition. See *Estate of Kahr v. Commissioner*, 48 T.C. 929, 934 (1967), affd. on this issue 414 F.2d 621 (2d Cir. 1969), where we held that a taxpayer was taxable on funds which he actually withdrew from his partnership.[4]

Implicit in petitioners' argument is that, because of section 702(c), Wagner and Farina were each taxable in 1973 on 30 percent of the amounts collected. Assuming without deciding that petitioners are correct in taking this position, Wagner and Farina (whom we emphasize are not before us herein) would appear to have offsetting losses, and Etoll would still be considered as having income to the full extent of the amounts collected.[5]

A taxpayer must report his income, from all sources, on an annual basis and "The 'claim of right' interpretation of the tax laws has long been used to give finality to that period, and is now deeply rooted in the federal tax system." *United States v. Lewis, supra* at 592. See also *Walet v. Commissioner, supra.* Petitioners' position, if sustained, would require their 1973 taxable year to be held open until a final determination was made concerning Etoll's entitlement to the disputed amounts, in this case until 1978. The Supreme Court has rejected similar claims in respect of income from various sources (see, e.g., *James v. United States*, 366 U.S. 213 (1961); *Healy v.*

---

[4] In point of fact, the determination by respondent which was sustained charged the taxpayer with his distributive share in accordance with the partnership agreement and with the excess of the amount withdrawn as improperly diverted funds. See *Estate of Kahr v. Commissioner*, 48 T.C. 929, 933 (1967), and 414 F.2d 621, 624 (2d Cir. 1969).

[5] See *Woods v. Commissioner*, T.C. Memo. 1958–134.

*Commissioner, supra; United States v. Lewis, supra; North American Oil v. Burnet, supra*), and we do not believe that, because we are dealing here with income generated by a partnership, a different result is in order.[6]

Etoll excluded from his 1973 gross income $4,500 for anticipated legal fees in the Farina/Wagner lawsuit. We agree with respondent that Etoll, a cash basis taxpayer, was not entitled to a deduction in 1973 in excess of the amount paid during that year, i.e., $1,051.20.

Although it is not entirely clear, it appears that petitioners take the position on brief that $2,500 received from the sale of Etoll's library (which the parties stipulated as having a basis of zero) constitutes capital gain rather than ordinary income. Since this issue was not raised in the pleadings, we will not consider it. *Molbreak v. Commissioner*, 61 T.C. 382, 393 (1973), affd. per curiam 509 F.2d 616 (7th Cir. 1975).

*Decision will be entered for the respondent.*

---

[6]See *Reed v. Commissioner*, T.C. Memo. 1978–58.