MICHAEL PHILLIPS AND SOPHIA PHILLIPS, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 45424.    Filed January 17, 1956.

*J. M. Solon, Esq.*, for the petitioners.
*David H. Nelson, Esq.*, for the respondent.

OPINION.

MULRONEY, *Judge:* The sole question in this case is whether attorney's fees paid to petitioner under a contingent fee contract, after favorable adjudication in the State trial court, without any restriction as to their disposition or use, are income taxable to the petitioner in the year of receipt.

Petitioner, an attorney, was retained under a contingent fee contract to secure refunds of the Illinois State sales tax paid by certain clients under protest. Under the agreement, petitioner was to be paid a percentage of the tax refunds recovered from the State. Petitioner was successful in the State trial court; the tax refunds were made in the form of warrants. The warrants were turned over to a bank, and the payees, the clients, came to the bank, endorsed the warrants and received the amount, less the percentage due petitioner. The bank credited petitioner's share to a separate checking account in his name. In this manner, petitioner received a portion of his contingent fee in December 1948, and the balance in January 1949. Petitioner did not include any portion of the contingent fee received in 1948 and 1949 in his income tax returns for those years. Some time before the month of August 1949, petitioner had withdrawn and spent practically the entire balance in the special checking account derived from his share of the tax refund warrants. In January 1949, the State taxing authority served notice of an appeal to the Supreme Court of Illinois. In November 1949, the Supreme Court of Illinois reversed the trial court, holding that the decree of the lower court was void. Petition for rehearing was denied by the Supreme Court of Illinois in January of 1950. Subsequently, in litigation consummated in later years, the State collected the refunded taxes from petitioner's clients.

Respondent argues the fees paid in 1948 and 1949 were compensation for services rendered and constitute income in the years paid and any deduction for repayment could be taken in the years of repayment. We agree with the respondent that the portion of the fee received by the petitioner in December 1948 was taxable income for that year. In *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, the Supreme Court explained the doctrine which we believe is applicable here:

If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * *

Here, the money was received by the petitioner under a claim of right, after the favorable lower court decree, and there was no restriction

as to the disposition of such money once it was credited by the bank to petitioner's checking account. It is true that the possibility still existed of an appeal by the State, but the possibility that, upon reversal by the higher court, the money would at some future date have to be returned, in no way diluted petitioner's claim to the money and to its unrestricted use in 1948. Such future uncertainties cannot be allowed to determine the taxability of moneys in the year of their receipt by a taxpayer. There was no promise of repayment in 1948 and no recognition by petitioner in that year that he was under any duty to repay the fees he had collected. He held the fees throughout the year 1948 under a claim of right. It is immaterial that the petitioner was mistaken in his claim. *Healy* v. *Commissioner*, 345 U. S. 278, rehearing denied 345 U. S. 961. Petitioner also argues that the State of Illinois at all times had retained "special title" in the protested taxes, paid by the petitioner's clients from the time of the deposit with the State treasurer until the State either acquired full title by court order, or the special title was divested by a final order in the protesting taxpayer's favor, and that such title in the State prevents the receipts in 1948 and 1949 from being taxable income. We do not believe that refinements of title can overcome the "readily realizable economic value"[1] and the practical use and benefit of the money enjoyed by petitioner in 1948. Petitioner cites *Commissioner* v. *Wilcox*, 327 U. S. 404, as support for this argument; but that case, which we do not consider governing the situation here, has been limited to its facts in a subsequent Supreme Court opinion. *Rutkin* v. *United States*, 343 U. S. 130, rehearing denied 343 U. S. 952. We conclude, on the above facts, that the petitioner's receipts in 1948 were under a claim of right and unrestricted as to use, and that they were taxable income in that year.

In January 1949, credits to petitioner's checking account equaled $43,575.98. Again there was no restriction on the use of these receipts. The same month, the State filed an appeal from the decree of the lower court, and on November 21, 1949, the Supreme Court of Illinois reversed the decree, declaring it to be void, and did not remand the cause for further hearings. The petitioner makes the contention that the fees received by him in 1949 were not taxable in that year because after the nullification of the lower court decree he held conversations with several of his clients and told them he "felt indebted" to them for the fees he had received. Although there were more than 20 clients involved in the litigation, the petitioner identifies only one, the Sherman Hotel, as participating in these conversations. The petitioner argues that the claim of right doctrine is defeated by these admissions to some of the clients. We do not agree. By August of 1949, the petitioner had spent all but $11.61 of the fees received by

---

[1] *Rutkin* v. *United States*, 343 U. S. 130, 137.

him. The conversations with the few clients were based apparently on the action of the Supreme Court of Illinois in *Massell* v. *Daley*, *supra*, nullifying the lower court decree. This case did not establish the right of the State to recover the refunds made to the petitioner's clients. At best, the petitioner was making a surmise as to an eventual liability to repay the money received by him. It is significant that a petition for rehearing in *Massell* v. *Daley*, *supra*, was denied in the following year, 1950, so the matter was still open until then. Moreover, the Illinois Supreme Court in 1949 in *Massell* v. *Daley*, *supra*, did no more than nullify the lower court decree. It did not rule upon the question of the repayment of the refunds by the taxpayer to the State. Indeed, the State instituted an action in 1950 in the Circuit Court of Cook County for recovery of the money from the petitioner's clients, and it was not until May 5, 1953, when judgment was entered by that court in favor of the State, that these clients were obliged to repay the tax refunds erroneously received by them some years before. This judgment was affirmed by the Illinois Supreme Court in *People* v. *Massell*, 2 Ill. 2d 603, 119 N. E. 2d 259 (1954), where the court pointed out that in its prior decision in 1949 in *Massell* v. *Daley*, *supra*, where the lower court decree authorizing the refunds had been declared void, "No opinion was expressed * * * on the right of the State to restitution for the sums refunded pursuant to the invalid decrees."

The petitioner's clients contested, in *People* v. *Massell*, *supra*, the right of the State to recover the refunded taxes paid by the State in 1948 and 1949. The nature of their arguments appears in a quotation from the opinion of the Illinois Supreme Court in this case:

the defendants in the case at bar appeal from a similar judgment against them severally, contending that the decree appealed from in *Massell* v. *Daley*, 404 Ill. 479, was not a consent decree but a judicial determination of rights; and that since it had not been reversed at the time defendants received and cashed the warrants by which the refunds were made, they were "protected" by the decree and not liable to make restitution. It is also argued that the decree, being a judicial determination, had the effect of vesting title to the fund in defendants, that since the State officials then had no right to immediate possession defendants could not have converted the funds; and that the present action by the State must therefore fail.

There was no clear and undisputed liability on the part of the petitioner's clients to repay the tax refunds to the State in 1949, and we do not believe that it has been established that the petitioner was bound to repay the fees to the clients in 1949. Such an obligation to repay arose, if at all, in 1954.

We hold that the legal fees credited to the petitioner in 1949 were received by him under a claim of right, without any restriction as to their disposition or use, and that they were taxable income to him in that year.

*Decision will be entered for the respondent.*