**Michael PHILLIPS and Sophia Phillips, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 11758.

United States Court of Appeals Seventh Circuit.

Nov. 21, 1956.

Joseph M. Solon, Chicago, Ill., for petitioners.

Charles K. Rice, Asst. Atty. Gen., Mildred L. Seidman, Attorney, U. S. Dept. of Justice, Washington, D. C., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before MAJOR, FINNEGAN and SCHNACKENBERG, Circuit Judges.

MAJOR, Circuit Judge.

Petitioners, husband and wife, seek review of a decision of the Tax Court entered January 18, 1956, 25 T.C. 767. The case involves a dispute as to the taxability as income of certain sums received by petitioner, Michael Phillips. Sophia Phillips is a party only because she and her husband filed joint tax returns for the years involved. No further consideration need be given her and hereafter Michael will be referred to as the petitioner or taxpayer.

During the years in controversy, 1948 and 1949, taxpayer, a licensed and practicing attorney of the State of Illinois, received certain contingent fees which were not reported in his income tax returns for those years. Respondent held that the contingent fees thus received should have been reported for the years in which they were received and, based thereon, determined deficiencies in the taxpayer's income tax. This determination was sustained by the Tax Court.

The facts, largely stipulated, are not in dispute. As a premise for the legal issue presented to this court, a brief statement will suffice. Milton Raynor and Thomas Rosenberg, attorneys and practitioners of the State of Illinois, were employed by persons engaged in the night club and cabaret business to contest the taxability of their businesses under the Illinois Retailer's Occupation Tax Act (commonly known as the Sales Tax). This employment was upon a contingent fee basis. Petitioner herein entered into a contingent fee arrangement with said Raynor and Rosenberg to act as co-counsel.

On November 14, 1945, a proceeding was filed in the Circuit Court of Cook County, Illinois, to test the applicability of the statute. On December 1, 1948, a decree was entered in favor of the plaintiffs therein (taxpayer's clients). A supplemental order specifying the amounts to be refunded to each plaintiff was entered December 20, 1948. Shortly thereafter and during the year 1948, negotiable warrants payable to plaintiffs in that action were issued and delivered to taxpayer as one of the attorneys for the payees. By letter dated December 30, 1948, taxpayer delivered these warrants to the Exchange National Bank of Chicago, with directions to secure the endorsement of the payees and pay to them

the difference between the refund secured for each and the contingent fee agreed upon, which was to be credited to taxpayer's newly opened checking account. This was done, and on December 31, 1948, taxpayer's account was credited with an initial deposit of $33,047.07. On the same day, taxpayer paid $10,000 in counsel fees to his associate attorneys by a check drawn against this account.

The same procedure as to the remaining warrants was followed in 1949, and as a result taxpayer's account at the Exchange National Bank was credited in the amount of $43,575.98. In addition, taxpayer deposited in his regular bank account at the American National Bank the sum of $1,496.25. Thus, petitioner received fees during the year 1949 in the amount of $45,072.23. Of this amount taxpayer paid by check to his associate counsel a total of $15,000. Respondent allowed the taxpayer credit for the amounts which he had paid his associate counsel, that is, $10,000 thus paid in 1948, and $15,000 paid in 1949. Taxpayer was charged by respondent with the net amount of fees received by him for the respective years, that is, $23,047.-07 for 1948, and $30,072.23 for 1949. Taxpayer failed to report the fees thus received for the respective years and because of such failure respondent determined deficiencies in his tax for those years. Substantially all of the fees thus received by taxpayer were expended by him in 1949 in payment of personal obligations. As of the first of August, 1949, there remained a balance of $11.61 in his checking account at the Exchange National Bank.

On January 21, 1949, the State of Illinois took an appeal to the Supreme Court of Illinois from the decision of the Circuit Court of Cook County, Illinois, rendered December 1, 1948. On November 21, 1949, the Supreme Court reversed the decree of the Circuit Court, without remandment, and denied petition for rehearing January 12, 1950. Massell v. Daley, 404 Ill. 479, 89 N.E.2d 361, 13 A.L.R.2d 1356.

In January 1950, the State of Illinois commenced an action in the Circuit Court of Cook County, naming as defendants substantially all of the plaintiffs who had been awarded a refund as a result of the Circuit Court decision, to recover monies allegedly wrongfully paid by the State Treasurer under the Circuit Court decree. In this action judgment was rendered in 1953, in favor of the State, by the terms of which those who had profited by the early action of the Circuit Court were required to refund to the State amounts thus received (this included the clients of taxpayer and associate counsel). This judgment was affirmed by the Supreme Court March 17, 1954, rehearing denied May 19, 1954. People of the State of Illinois v. Massell, 2 Ill.2d 603, 119 N.E.2d 259.

While we think it immaterial, perhaps in fairness to the taxpayer we should also state that he testified in rather uncertain fashion that after the first decision of the Supreme Court reversing the judgment of the Circuit Court he stated to some of his clients that there had been an erroneous receipt of fees by him in 1948 and 1949, and that subsequently, in 1954, he gave collateral to one of his clients, guaranteeing repayment of said fee. In this connection it should be noted that taxpayer has not repaid or offered to repay to his clients any of the fees involved in this controversy and received by him as previously shown. It should also be noted that taxpayer's clients did not, after the decision of the Supreme Court invalidating the Circuit Court judgment, acknowledge their liability to make refund to the State. On the other hand, they defended in the action by the State to compel such refund, which resulted, as shown, in an unfavorable decision by the trial court, later affirmed by the Supreme Court.

Taxpayer argues that the refunds made to his clients by reason of the Circuit Court judgment were erroneous and void in view of the subsequent decision of the Supreme Court reversing that judgment. It follows, so it is argued,

that the fees received in 1948 and 1949 by the taxpayer, who was employed on a contingent fee basis, were likewise erroneous and that as a result he was obligated to return such fees to his clients. This argument is emphasized as to the year 1949, based on the premise that his obligation to return such fees became known at the time of the decision of the Supreme Court, in December of that year. In other words, having been employed on a contingent fee basis, it became known at the time of the Supreme Court decision that petitioner was not and never could be entitled to fees for services which he had rendered.

On the other hand, respondent urges that the fees paid to taxpayer in 1948 and 1949, as determined by the Tax Court, were received under a claim of right without restriction as to their use, and thus were properly includible in his income for those years. An imposing line of Supreme Court cases sustains the soundness of respondent's position. In North American Oil Consolidated v. Burnet, 286 U.S. 417, at page 424, 52 S.Ct. 613, at page 615, 76 L.Ed. 1197, the court stated:

> "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent."

In United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560, the court, upon a factual situation more favorable to the taxpayer than that of the instant case, applied the claim of right doctrine. There, the taxpayer received a bonus in the amount of $22,000, subsequently determined in State Court litigation to have been improperly computed. Under compulsion of a judgment, the taxpayer in a subsequent year repaid $11,000 of the bonus thus received. The court held that the taxpayer was required to report the entire amount of the bonus for the year in which it was received, notwith-

standing the fact that it was later adjudicated that one-half of the bonus had been paid to the taxpayer by mistake, which he was subsequently required to repay. In contrast, the taxpayer in the instant situation has never repaid the fees alleged to have been erroneously received. More than that, there has not been any adjudication determining his liability to make such repayment. In the Lewis case, referring to the statement in North American Oil (above quoted), the Court stated, 340 U.S. at page 591, 71 S.Ct. at page 523:

> "Nothing in this language permits an exception merely because a taxpayer is 'mistaken' as to the validity of his claim."

Further, the court stated, 340 U.S. at page 592, 71 S.Ct. at page 523:

> "The 'claim of right' interpretation of the tax laws has long been used to give finality to that period, and is now deeply rooted in the federal tax system. * * * We see no reason why the Court should depart from this well-settled interpretation merely because it results in an advantage or disadvantage to a taxpayer."

In Healy v. Commissioner, 345 U.S. 278, 73 S.Ct. 691, 97 L.Ed. 1007, the court again applied the claim of right doctrine and held that the taxpayer was required to report income in the year of receipt notwithstanding that he was in a subsequent year required to make a return of a portion of the amount thus received. In discussing the doctrine the court stated, 345 U.S. at page 282, 73 S.Ct. at page 674:

> "There is a claim of right when funds are received and treated by a taxpayer as belonging to him. The fact that subsequently the claim is found to be invalid by a court does not change the fact that the claim did exist."

In that case, as here, it was argued that the claim of right doctrine was not applicable because of a restriction upon the right of the taxpayer to use the funds

during the taxable year. The court denied the contention, with the statement, 345 U.S. at page 284, 73 S.Ct. at page 675:

"But a potential or dormant restriction, such as here involved, which depends upon the future application of rules of law to present facts, is not a 'restriction on use' within the meaning of North American Oil [Consol.] v. Burnet, supra."

There can be no question but that the taxpayer received the fees in 1948 and 1949 under a claim of right, and the fact that it was subsequently determined that the claim was ill founded is immaterial. There is no merit in taxpayer's argument that the decision of the Supreme Court in December 1949 determined his liability to make a refund to his clients. In the first place, that decision did not become final until the following year, upon denial of a petition for rehearing. In any event, it is not discernible on what basis taxpayer's liability to make refund to his clients would have become fixed, at least prior to the time when the liability of his clients to make refund to the State was determined, and this did not occur until the decision of the Supreme Court in 1954. More than that, as already noted, taxpayer has not repaid to his clients any portion of the fees received during the taxable years in controversy. Also without merit is taxpayer's argument that the decision of the Supreme Court in 1949 placed a restriction upon his right to use the fees received. At that time the money received as fees had already been expended by the taxpayer for his own personal use. The record is devoid of any showing of a restriction upon his right to use such funds; in fact, the taxpayer testified that he was aware of no restriction on his right to use and spend the funds.

Taxpayer emphasizes the fact that as an attorney he was acting in a fiduciary relation with his clients which distinguishes this case from those in which the claim of right doctrine has been applied. No case is cited supporting such a distinction and we think it is of no con-sequence. True, an attorney is under obligation to refund to his clients monies improperly or erroneously received but, so far as we are aware, all persons are under a like obligation. There is no point in relating further the proceedings which occurred subsequent to the taxable years in controversy relative to the litigation in which the clients of the taxpayer were interested. This is so for the reason that under the claim of right doctrine such proceedings are immaterial.

In our view, the Supreme Court decisions above cited are controlling and require a decision adverse to the taxpayer. Such being the case, no purpose could be served in citing or discussing cases upon which the taxpayer relies.

The decision of the Tax Court is

Affirmed.