EUGENE H. WALET, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CELIA R. WALET, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 63479, 63480. Filed November 28, 1958.

*Eugene H. Walet, Jr., Esq., pro se.*
*Towner S. Leeper, Esq.,* for the respondent.

464

OPINION.

RAUM, *Judge:* 1. *Adjustment with respect to liability under section 16 (b).*—Petitioner is not entitled to reopen the taxable years 1950 and 1951 in order to reflect the amount of his 1954 payment of a judgment rendered against him under section 16 (b) of the Securities Exchange Act of 1934. Our conclusion in this regard is grounded in two fundamental concepts of tax accounting, the claim of right doctrine and the annual accounting period.

The claim of right doctrine was thus stated by Mr. Justice Brandeis in *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, 424:

If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * *

Petitioner has given numerous indications that at all times prior to the Supreme Court's denial of certiorari in *Jefferson Lake Sulphur Co.* v. *Walet*, 104 F. Supp. 20 (E. D. La. 1952), affirmed 202 F. 2d 433 (C. A. 5, 1953), certiorari denied 346 U. S. 820 (1953), he regarded as his own the entire amount realized on his 1950 sales of Jefferson Lake common stock. He reported such amount on his 1950 income tax return; he used $20,000 of the proceeds to discharge his personal indebtedness to Jefferson Lake; he contested his liability for insider's profits under section 16 (b) both in the District Court and on appeal; the proceeds were in his possession and subject to his control from 1950 to 1954; and he stated at the hearing in this case, with reference to his liability under section 16 (b), that "I don't believe that I owed it and I still don't think I owed it." It is thus clear that petitioner claimed the profits as of right, that such profits were properly includible in his gross income for 1950, and, consequently, that there was no capital loss carryover from 1950 to 1951.

Petitioner places great emphasis on the language of section 16 (b) that any profit realized from insider trading "shall inure to and be recoverable by the issuer." He argues that if the profit "inured" to Jefferson Lake, it could not also have "inured" to petitioner. This

argument overlooks the point that the language of section 16 (b) regarding the inurement of insider's profits cannot control the "realization" of income for tax purposes. Section 16 (b) is a prophylactic rule designed to prevent misuse of inside information by officers and large shareholders of corporations; it is not an expression of tax policy or accounting principles. For tax purposes income is realized when it is in fact received by the taxpayer under a claim of right. If such claim exists, as it does here, the adjudication in a later year that the claim was mistaken will not operate to reopen the year in which the income was realized. Further, the "profits" contemplated by section 16 (b) are not necessarily the same as those subject to tax. For tax purposes gain is computed by subtracting the cost (or other basis) of shares of stock from the amount realized on the disposition of the same shares. If the particular shares cannot be identified, a first-in, first-out presumption is usually applied. For section 16 (b) purposes, on the other hand, purchases and sales may be coupled without regard to a specific stock certificate and an arbitrary matching is employed to achieve the showing of a maximum profit. *Smolowe* v. *Delendo Corporation*, 136 F. 2d 231 (C. A. 2), certiorari denied 320 U. S. 751.

Similar reasoning disposes of petitioner's contention that he was a "trustee" of the profits for the corporation, and, therefore, that he never realized the profits in his individual capacity. Petitioner was not a trustee for the corporation in any formal sense. It does not appear that there was a res or that petitioner in any manner segregated the profits for the benefit of the corporation. Rather, he appears to have commingled them with his own funds and used them for his own purposes. Certainly he has not shown otherwise. At most he may have become a "constructive" trustee of the profits for the corporation. But a constructive trusteeship subsequently imposed by equity does not warrant an exception to the claim of right doctrine. Cf. *Healy* v. *Commissioner*, 345 U. S. 278; *Phillips* v. *Commissioner*, 238 F. 2d 473 (C. A. 7), affirming 25 T. C. 767. Petitioner's enjoyment of the proceeds *during the taxable year in question* was not, and could not have been, disturbed by a declaration of a constructive trust in a later taxable year.

The principle of fixed accounting periods is coordinate with the claim of right doctrine and need only be set forth briefly. "Income taxes must be paid on income received (or accrued) during an annual accounting period. * * * The 'claim of right' interpretation of the tax laws has long been used to give finality to that period, and is now deeply rooted in the federal tax system." *United States* v. *Lewis*, 340 U. S. 590. See also *N. Gordon Phillips*, 29 T. C. 47, on appeal (C. A. 9). Thus, adjustments in income attributable to events

occurring subsequent to the accounting period in which such income was realized may be reflected, if at all, only in the subsequent year.

In accordance with these views we hold that respondent was correct in disallowing petitioner's refund claim for 1951. If petitioner is entitled to any adjustment, it is by way of a deduction in 1954. Cf. *Lawrence M. Marks*, 27 T. C. 464. The question whether petitioner is so entitled is not at issue here since the year 1954 is not before us.

2. *Deductions for "personal business expenses."*—Petitioner's returns claimed deductions in the aggregate amounts of $4,571.06, $9,974.29, and $10,466.31 for the years 1951–1953, respectively, as expenses with respect to traveling, gifts, entertainment, and club dues. During these years petitioner was president of Jefferson Lake Sulphur Company and traveled extensively on behalf of his company. He incurred substantial expenses in this regard, but his company reimbursed him therefor, and they are not involved herein. The expenses at issue in this proceeding were claimed by petitioner as "personal business expenses." The burden, of course, was upon him to show the nature of that business, the nature and amount of the expenses claimed, and the proximate relationship between such expenses and the alleged business. However, the evidence is so loose, general, and unsatisfactory that we have no doubt that the burden of proof has not been met. We cannot find that the Commissioner erred in disallowing the claimed deductions.

Petitioner is a lawyer. He was general counsel for his company, and as president he appears to have guided its affairs with notable success. He impressed us as being an intelligent and perceptive person. Yet, despite repeated attempts by the Court at the trial to obtain clarification as to these expenses and the nature of the business to which they allegedly pertain, petitioner's testimony was vague and general. We are convinced that petitioner was fully aware of the difficulties generated by the vagueness of his testimony, and the blame for the deplorable condition of the record must be placed upon him. Petitioner's reply brief states:

It is true that the record is not as clear as it should be on the substantiation of the deductions. This is due to the fact that petitioner represented himself at the trial and did not properly present available evidence at the trial. * * *

The first sentence is a gross understatement. And as to the second sentence, even assuming that it might otherwise be a justification, the fact that petitioner was both a lawyer and an astute businessman belies the implications which the brief suggests.

In general terms petitioner testified that he would from time to time seek out profitable "deals" in oil or other natural resources, and that in the course of his attempts to obtain such deals he expended the amounts in question for entertainment, meals, and the like. He

testified that he entered into such deals with "partners" or other joint venturers. However, there is no convincing evidence in this connection that any partnership returns were filed. The so-called partners were not satisfactorily identified, and the vagueness of the testimony in this connection left us with a sense of unreality about the entire matter.

Moreover, even if there were a genuine business, as distinguished from mere investment activities, not every expense in connection therewith would be deductible under section 23 (a) (1) (A). Expenditures made in *investigating* a potential new trade or business and preparatory to entering therein are not deductible under section 23 (a) (1) (A) since they are not incurred in *carrying on* such trade or business. *George C. Westervelt*, 8 T. C. 1248; *Morton Frank*, 20 T. C. 511; *Frank B. Polachek*, 22 T. C. 858; *J. W. York*, 29 T. C. 520.

Nor does the evidence show whether there was any proximate relationship between the expenditures and the alleged business. Certainly, the word "entertainment" is not a magic formula entitling one to deduction without inquiry as to whether the entertainment in question really had a significant bearing upon the conduct of the alleged business. The situation is one that is susceptible of gross abuse, and it is not too much to ask that one claiming such deductions show that the expenditures in question were genuinely related to the conduct of a business. We cannot say on the record before us that any of the claimed expenditures could qualify for deduction; accordingly, there is no occasion to make an approximation such as was indicated in *Cohan* v. *Commissioner*, 39 F. 2d 540 (C. A. 2). And finally, we do not have satisfactory evidence that expenditures in the amounts claimed were in fact made, or, even if made, that they were not reflected in some fashion, at least in part, in the expenses which petitioner incurred on behalf of his company and for which he has already been given credit. Compare *Allan Cunningham*, 22 T. C. 906, 911, a case similar in some respects to the case at bar, where we said:

To the extent that petitioner may have spent some time, after hours, in investigating the possibility of profitable "deals" in Japan, such activities do not satisfy us as being of the kind that would qualify as carrying on a trade or business. Cf. *George C. Westervelt*, 8 T. C. 1248, 1254; *Morton Frank*, 20 T. C. 511, 514; *Frank B. Polachek*, 22 T. C. 858, 863. Furthermore, the evidence as to such activities was so vague and general that we could not in any event conclude that they involved any considerable expenditure of time or energy on the part of petitioner or that any of the expenses claimed as deductions were in any way related to such activities. * * *

The issue herein was presented to us as involving "business" deductions, which would be allowable under section 23 (a) (1) (A). No question was litigated with respect to possible deductibility of non-

business expenses under section 23 (a) (2), and we do not consider any such issue, although some of the considerations outlined above would be equally fatal to the claim of deduction under the latter provisions.[1]

3. *Deductions for depreciation and repairs.*—Although we have found that petitioner purchased the property at 429 Audubon Boulevard in 1944 with the intention of renting it to his former wife and their son, and that he actually received rent for more than a year, the record plainly shows that such intention had been completely abandoned long before 1951. Petitioner testified that he "elected" not to charge rent in 1946 and years subsequent thereto and that thereafter he neither received nor reported any rental income from the property. Further, petitioner did not anticipate that he would ever again receive rental income from the property so long as his former wife and son continued to use it as their home. He testified on one occasion that he could not have obtained rent unless "she [his former wife] came into a lot of money some place," and on another occasion that "I knew that the only support revenue for the rest of her life will come from me." Finally, petitioner's motives in permitting the rent-free occupancy of the house from 1946 through 1953 were largely magnanimous, springing from the recognition that he had a substantial income while his former wife and son were finding it difficult to keep pace with the rising cost of living. In view of these facts we hold that the property in question was not held for the production of income during 1951, 1952, and 1953 but rather for the personal use of supporting petitioner's former wife and their minor child. It follows that respondent correctly disallowed deductions for depreciation under section 23 (1) (2) and for maintenance expenses under section 23 (a), I. R. C. 1939.

Petitioner relies principally on the following statement from section 39.23 (a)–15 (b), Regulations 118:

Similarly, ordinary and necessary expenses incurred in the management, conservation, or maintenance of a building devoted to rental purposes are deductible notwithstanding that there is actually no income therefrom in the taxable year, and regardless of the manner in which or the purpose for which the property in question was acquired. Expenses incurred in managing, conserving, or maintaining property held for investment may be deductible under this provision even though the property is not currently productive and there is no likelihood that the property will be sold at a profit or will otherwise be productive of income * * *

---

[1] Moreover, a serious question exists under section 23 (a) (2) as to whether deduction is precluded because the alleged expenses were incurred in the search for business opportunities rather than for the protection or management of property that the petitioner already owned. For, it appears settled that expenses incurred not to produce income from an existing right but to create a new interest are not within the purview of section 23 (a) (2). *Marion A. Burt Beck,* 15 T. C. 642, affirmed 194 F. 2d 537 (C. A. 2), certiorari denied 344 U. S. 820. Cf. *United States* v. *Mellinger,* 228 F. 2d 688 (C. A. 5).

In our opinion, however, the property was not "devoted" to rental purposes. Any intention of renting the property to his former spouse had long been abandoned by petitioner. This case is, in one respect, the converse of *William C. Horrmann*, 17 T. C. 903. There we held that a taxpayer could deduct maintenance and depreciation expenses where he had abandoned his home as a residence and devoted it to income-producing purposes. Petitioner in the present case did just the opposite; he abandoned any income-producing purpose [2] and devoted his property to a personal use. Cf. *James Parks Bradley*, 30 T. C. 702.

*Decision will be entered under Rule 50.*

---

[2] It is highly questionable on this record whether petitioner held the property for profit or investment even when he first acquired it. The evidence is clear that he purchased it specifically as a home for his former wife and son, and it is doubtful whether the amount of so-called rental which he deducted from her alimony was sufficient to meet all charges, including depreciation, repairs, real estate taxes, etc. The evidence strongly suggests that petitioner's sole motive in purchasing and holding the property even in that early period was a personal one, without any thought or intention of realizing a profit.