Louis Marks and Nettie Marks v. Commissioner.
Marks v. Commissioner
Docket No. 88361.
United States Tax Court
T.C. Memo 1963-304; 1963 Tax Ct. Memo LEXIS 43; 22 T.C.M. (CCH) 1600; T.C.M. (RIA) 63304; November 4, 1963
Edward Newman, 11 E. 44th St., New York, N. Y., for the petitioners. Eugene L. Wilpon, for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income tax for the calendar years 1953, 1954, and 1955 in the amounts of $15,297.06, $5,447.62, and $749.02, respectively. A part of respondent's determinations are not questioned in the petition. The issues for decision are (1) whether petitioners received corporate distributions constituting constructive dividends in 1953, 1954, and 1955 in the amounts of $21,216.84, $9,370.93, and $1,347.51, respectively; (2) whether petitioners incurred *44 ordinary and necessary business expenses in 1953, 1954, and 1955 of $3,120, $3,120, and $1,040, respectively; and (3) whether petitioners donated to charitable organizations during 1953, 1954, and 1955 the sums of $3,000, $1,300, and $1,185, respectively, as claimed or only $600, $800, and $850, respectively, as allowed by respondent in the deficiency notice or on brief. Findings of Fact Some of the facts have been stipulated and are found accordingly. Louis Marks, hereinafter referred to singly as petitioner, and Nettie Marks are husband and wife and reside at 656 Emerson Street, Woodmere, New York. Their joint income tax returns for the taxable years 1953, 1954, and 1955 were filed with the district director of internal revenue, Brooklyn, New York. During the taxable years 1953, 1954, and 1955, petitioner was president and sole stockholder of Wellmade Bloomer Company, Inc.; El Mark Mills, Inc.; Marco Polo Mills, Inc.; and Debbie Joy Creations, Inc. The corporations' business declined and an over-all loss was sustained in 1955. In 1956 there was an assignment for the benefit of creditors. Petitioner sold his interest in the corporations about 1960, at which time the corporations *45 had no remaining assets. The corporations had carry-back tax losses. The following corporate expenses were properly disallowed by respondent and were acquiesced in by the corporations: Company
1953
1954
1955
Wellmade Bloomer Com-
pany, Inc.
$18,640
$ 8,240
$11,840
El Mark Mills, Inc.
3,500
4,000
4,000
Marco Polo Mills, Inc.
5,000
4,000
400
Debbie Joy Creations, Inc.
4,000
Total
$27,140
$20,240
$16,240
The disallowed corporate expenditures consisted at least in part of cash withdrawn from the corporations. Of the disallowed amounts, $5,923.16, $10,819.07, and $14,842.49 were determined by respondent to be a return of capital in the years 1953, 1954, and 1955, respectively. The statutory exclusion of $50 was allowed for each of the years 1954 and 1955. The remaining amounts in each of the years are the alleged constructive dividends which are in issue here. Petitioners did not report any dividend income on their returns for any of the years. Petitioners reported the following salaries and commissions received from the corporations: 1953: Wellmade Bloomer Company,
Inc.
$15,600.00
Marco Polo Mills, Inc.
15,744.85
$31,344.85
1954: Wellmade Bloomer Company,
Inc.
$15,600.00
Marco Polo Mills, Inc.
11,381.05
$26,981.05
1955: Wellmade Bloomer Company,
Inc.
$ 5,200.00
Marco Polo Mills, Inc.
7,280.61
$12,480.61
*46 Petitioner was the chief operating officer of the corporations and devoted the majority of his time to "outside" selling. He entertained and gave gifts on behalf of the corporations to customers, who included buyers from McCrory Stores, G. C. Murphy Company, and J. C. Penney. The corporations "used" several factories, including one in Puerto Rico, which petitioner visited at various times. Some expenditures for entertainment, gifts, and travel on corporate business were made in cash. No records were maintained as to the amounts spent for these purposes. The employees of petitioner's corporations were on strike for approximately two months about May and June 1954. During the strike $6,000 was paid to bribe union truckmen and $100 a week to police to circumvent the strike. These amounts were paid with cash withdrawn from the corporations. The current adjusted earnings and (losses) of Wellmade Bloomer Company, Inc., for the fiscal years ended March 31, 1954, March 31, 1955, and March 31, 1956 were $7,643.31, ($3,474.82), and ($165,632.90), respectively. The surplus of Wellmade Bloomer Company, Inc., at March 31, 1953 was $5,073.53. The current adjusted earnings of El Mark *47 Mills, Inc., for the calendar years 1954, 1955, and 1956 were $2,614.73, $2,898.95, and $2,008.51, respectively. The surplus of El Mark Mills, Inc., at December 31, 1953 was $975.32. The accumulated earnings and profits of Marco Polo Mills, Inc., for each of the fiscal years ended June 30, 1954, June 30, 1955, and June 30, 1956 were greater than corporate expenses disallowed by the respondent and determined to be dividend distributions to petitioner Louis Marks from Marco Polo Mills, Inc. The accumulated earnings and profits of Debbie Joy Creations, Inc., which were available for dividends as at April 30, 1955 amounted to $2,431.93. The original investment of Louis Marks in Debbie Joy Creations, Inc., was $1,000. The books of account of Wellmade Bloomer Company, Inc., reflect a loan receivable from Louis Marks of $10,299.54 as at March 31, 1954 and loans payable to Louis Marks amounting to $29,153.23 and $34,132.53 as at March 31, 1955 and March 31, 1956, respectively. The books of account of Wellmade Bloomer Company, Inc., reflect loans made to it by Joseph Rosenblum, petitioner's brother-in-law, and Mary Rosenblum of $9,000 and $6,000, respectively, on December 5, 1955. Petitioner *48 personally paid amounts for entertaining corporate customers and for other corporate business expenses. He maintained no records of these amounts. Petitioner received about $60 a week from his corporations for entertainment expenses. Petitioners claimed additional miscellaneous deductions for alleged unreimbursed expenses on their income tax returns for 1953, 1954, and 1955 in the amounts of $3,120, $3,120, and $1,040, respectively, all of which the respondent disallowed. Petitioners made charitable contributions in the taxable years 1953, 1954, and 1955. No records of the amounts contributed were maintained except that charitable contributions in 1955 in the amount of $850 are substantiated by canceled checks. Petitioners claimed deductions for charitable contributions on their income tax returns for the years 1953, 1954, and 1955 in the amounts of $3,000, $1,300, and $1,185, respectively, of which amounts respondent disallowed in the deficiency notice or on brief $2,400, $500, and $335, respectively. Petitioners received unreported constructive dividends as determined by respondent in 1953 and 1955 and in the amount of $2,570.93 in 1954. Petitioners incurred no unreimbursed *49 business expenses in any of the years involved. Petitioners made charitable contributions as follows: 1953
$1,000
1954
1,000
1955
1,000
Opinion With the exception of canceled checks evidencing certain charitable contributions during 1955, petitioners have produced no books or records or corroborating evidence, but have relied solely on the testimony of the individual petitioner to sustain their burden of proof. We have found that petitioner did spend some amounts of cash on behalf of the corporations in entertaining buyers, making gifts to them, and travel on corporate affairs. But his testimony as to specific items or amounts was vague, contradictory, or entirely lacking. And petitioner has failed to show that respondent did not allow such expenditures as business expenses to the corporation in determining the corporate disallowances. [1] As to the expenditures which petitioner claims he made on behalf of the corporations, with the exception of certain payments made during the 1954 strike, "we do not have satisfactory evidence that expenditures in the amounts claimed were in fact made, or, even if made, that they were not reflected in some fashion, at least *50 in part, in the expenses which petitioner incurred on behalf of his company and for which [it] has already been given credit." Eugene H. Walet, Jr., 31 T.C. 461 at 471 (1958), affirmed per curiam 272 F. 2d 694 (C.A. 5, 1959).
Petitioner testified specifically to definite amounts of cash paid to bribe union truckmen ($6,000) and police ( $100 a week for two months, or $800) during the 1954 strike. Such payments may not be allowable corporate deductions as being against public policy, Kerrigan Iron Works, Inc., 17 T.C. 566 at 578 (1951), but they are not thereby converted into income to petitioner, since he was a mere conduit and the amounts were, in turn, paid by him on behalf of the corporations. *51 Petitioners retained neither money nor benefit. See Frank T. Feagans, 23 T.C. 208 at 217 (1954). Accordingly, respondent's treatment of the disallowed corporate expenditures as constructive dividends [2] to petitioners under section 115, I.R.C. 1939, and section 316, I.R.C. 1954, is sustained in full as to 1953 and 1955 and to the extent the amount exceeds the $6,800 paid in 1954. Regardless of the applicability of the regulation [sec. 19.23a)-2(b), Regs. 103] to all or only a portion of the amounts in controversy, we think the respondent's action in including the sums in petitioner's gross income was warranted. In such circumstances as we have before us, where petitioner had compiete freedom in spending the money as he chose, we find nothing unreasonable in treating the money as his - as income to him - and in requiring him to justify whatever deductions he claims for business *52 expenses. [Lucien I. Yeomans, 5 T.C. 871, 875 (1945).] Petitioners have failed to show that they incurred any business expenses for which they were not reimbursed by the corporations. With corporate funds readily available and with the individual petitioner's acknowledgement that he did receive amounts in reimbursement, we find it unproven that petitioners employed any of their own income on such expenses. * * * The situation is one that is susceptible of gross abuse, and it is not too much to ask that one claiming such deductions show that the expenditures in question were genuinely related to the conduct of a business. We cannot say on the record before us that any of the claimed expenditures could qualify for deduction; accordingly, there is no occasion to make an approximation such as was indicated in Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2). * * * [Eugene H. Walet, Jr., supra at 471.] Canceled checks substantiate charitable contributions of $850 during 1955. Petitioners have kept no other records but maintain they made contributions in the amounts claimed. Applying the rule of Cohan v. Commissioner, 39 F. 2d 540 *53 (C.A. 2, 1930), we have made the best estimates we can from the evidence before us and have determined that petitioners contributed $1,000 in each of the years in issue. Decision will be entered under Rule 50. Footnotes
1. Although petitioner argues that amounts he spent were proper corporate business expenses, stating on brief that he "was no longer a stockholder of the corporations at the time the disallowances were made" and that "the corporations had sufficient carry back losses to wipe out any additional tax" (Reply brief, p. 3), he stipulated that the claimed corporate expenses which respondent has held to be distributions to him "were properly disallowed."↩
2. A comparison of the figures set out in our findings which were conceded or stipulated makes clear that accumulated or current earnings were available to cover all distributions determined to be dividends. And petitioner advances no contention to the contrary.↩