MARK A. McCORMACK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McCormack v. Commissioner
Docket No. 21869-84.
United States Tax Court
T.C. Memo 1987-11; 1987 Tax Ct. Memo LEXIS 11; 52 T.C.M. (CCH) 1321; T.C.M. (RIA) 87011; January 6, 1987. *11 P, an attorney, received $30,000 in 1980 as compensation for legal services to be rendered over the next 2 years. P prorated the amount over 2 years and reported the amount allegedly earned each week. Held: (1) The $30,000 was received as compensation for future services and not as a loan to be forgiven at a weekly rate over 2 years. (2) The entire $30,000 was income to P when received in 1980 under the claim of right doctrine. (3) P was an employee and not liable for selfemployment tax. (4) P is subject to the addition to tax for negligence under sec. 6653(a), I.R.C. 1954. Mark A. McCormack, pro se. C. Ellen Pilsecker, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $11,353.41 in the petitioner's Federal income tax and self-employment tax for 1980 and an addition to tax of $567.67 under section 6653(a) of the Internal Revenue Code of 1954. [1] The issues for decision are: (1) Whether $30,000 which the petitioner received in 1980 when he began working for another attorney for a period of 2 years was income or a loan; (2) if the amount was income, whether the petitioner was required to include it in income *12 in 1980; (3) whether the petitioner is liable for self-employment tax for 1980; and (4) whether the petitioner is liable for an addition to tax for negligence under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioner, Mark A. McCormack, resided in Winchester, Massachusetts, at the time the petition herein was filed. He filed his Federal income tax return for 1980 with the Internal Revenue Service Center, Andover, Massachusetts. He used the cash method of accounting and filed his return on a calendar year basis. In September 1980, the petitioner, an attorney, left the employ of the Massachusetts District Attorney's Office of Middlesex County and entered into an arrangement with Joseph J. Brodigan, also an attorney. Mr. Brodigan shared offices with other attorneys, doing business under the name Langan, Dempsey and Brodigan; he had an active civil litigation practice. The petitioner was engaged to assist Mr. Brodigan with this practice. On or about September 22, 1980, Mr. Brodigan and the petitioner entered into *13 an oral agreement providing that the petitioner would perform legal services for Mr. Brodigan for the next 2 years, effective immediately. Mr. Brodigan had the option to discharge the petitioner at any time for any or no cause. The petitioner was not paid a weekly salary for the 2 years he worked for Mr. Brodigan. Instead, to compensate the petitioner for the period from September 22, 1980, to September 22, 1982, Mr. Brodigan agreed to pay the petitioner $30,000 in the form of two checks: the first, in the amount of $15,000, was drawn on October 29, 1980 (the October check), and delivered to the petitioner on that day; the second, also in the amount of $15,000, was drawn on December 24, 1980 (the December check), and delivered to the petitioner on that day. No amount for Federal or State taxes of any variety was withheld from either check, and the petitioner received no health or other insurance benefits during the period. Mr. Brodigan intended the $30,000 to be remuneration for legal services to be rendered by the petitioner for the ensuing 2 years. Mr. Brodigan placed no restriction on the petitioner's use of the money. The petitioner was paid in this fashion because Mr. Brodigan *14 wished to avoid the administrative routines of withholding and check writing. Mr. Brodigan and the petitioner shared an informal understanding that if the petitioner were to cease performance, on his own initiative or at Mr. Brodigan's request, the unearned money paid to the petitioner would be returned to Mr. Brodigan. Throughout the 2-year period that the petitioner worked for Mr. Brodigan, Mr. Brodigan paid the rent for the office, compensated the secretary, and paid the telephone, copier, and other bills. Some expenses were carried entirely by Mr. Brodigan, others by Mr. Brodigan's office-mate, James M. Langan, Sr. The petitioner was supplied with an Office, a desk, a telephone, secretarial help, a copier, office supplies, and a small library. The petitioner made no monetary contributions for any of these items. The petitioner performed services almost exclusively for Mr. Brodigan's clients. His name was listed on the firm letterhead and in the lobby of the building as an associate of Langan, Dempsey and Brodigan. The petitioner's work consisted mostly of appearing in court in Mr. Brodigan's place. He also performed legal research and writing tasks, took depositions, and *15 interviewed clients on occasion -- all for Mr. Brodigan. The petitioner occasionally submitted written work to Mr. Brodigan for review. If Mr. Brodigan suggested modifications, the petitioner followed those suggestions. Mr. Brodigan allowed the petitioner to handle a small number of cases on his own. The petitioner had some decisionmaking authority while appearing in court. The petitioner set his own work hours, arriving between 9:00 a.m. and 10:00 a.m. and leaving about 6:00 p.m. At no time was the petitioner compensated independently by a client. On occasion, the petitioner received a fee payment from a client, but he always turned this money over to Mr. Brodigan. The petitioner fully performed his 2-year undertaking with Mr. Brodigan. No part of the $30,000 was ever refunded to Mr. Brodigan. Starting in October 1982, the petitioner received a weekly salary check with Federal and State income taxes withheld. No evidence appears on the record that the petitioner's duties changed in any way. Nor does any evidence suggest whether the petitioner began receiving fringe benefits of any kind after September 22, 1982. The petitioner prorated the $30,000.00 over the 2 years, thus *16 allocating $288.46 to each week. On his Federal income tax return for 1980, he reported $4,121.00 as compensation received from Mr. Brodigan representing the number of weeks that fell in 1980. In his notice of deficiency, the Commissioner determined that the entire $30,000.00 was includable in the petitioner's gross income for 1980, that such income was subject to the selfemployment tax, and that the petitioner was liable for the addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. OPINION The first issue for decision is whether the $30,000.00 represented a loan or payment of compensation. The petitioner first contends that he received the $30,000.00 as a loan, to be forgiven at the rate of $288.46 per week, over 2 years, if his performance was satisfactory. The petitioner relies on the fundamental proposition that a loan is not income. Beaver v. Commissioner,55 T.C. 85, 91 (1970); Solof v. Commissioner,1 B.T.A. 776, 785 (1925). The Commissioner contends that the $30,000.00 was received as compensation for services to be performed in the future and therefore is income in the year received. Sec. 61(a)(1); Beaver v. Commissioner,supra at 91. *17 In Beaver, the Court said: The question whether a debtor-creditor relationship is created at the time an advance is received is a question of fact to be determined upon a consideration of all the evidence. An essential element is the intent of the recipient to make monetary repayment of the amount of the advance and the intent of the person advancing the funds to enforce such repayment. [Citation omitted; 55 T.C. at 91.] Here, as in Beaver case, the petitioner gave up any right to receive periodic compensation for his services. No note evidencing the indebtedness has been brought to our attention, nor are we aware that the parties ever discussed or agreed upon a rate of interest to be applied to the asserted indebtedness. Mr. Brodigan testified that if he and the petitioner had parted ways, he would have expected a rebate of the amount not earned. [2] The petitioner testified, similarly, that repayment would have been due upon a termination of the work relationship. The primary purpose of the arrangement was the provision of personal services, not the making or receiving of monetary repayment. The petitioner's primary obligation was to work. The obligation to repay the remaining *18 amount was secondary; it would only have arisen if the petitioner had failed to complete his primary obligation, the provision of personal services. We conclude the amount received was income to the petitioner, and not a loan. [3]Beaver v. Commissioner,supra; see also George Blood Enterprises v. Commissioner,T. C. Memo. 1976-102. The second issue for decision is whether the $30,000, which we have found was compensation, was properly includable in the petitioner's gross income in 1980. At the outset, there is a factual dispute over when the petitioner received the *19 December check. The check was drawn on December 24, 1980, and we have found that it was delivered to the petitioner on that day. Mr. Brodigan had been advised that it was necessary for him to make the payment in 1980 for him to be entitled to deduct it for that year; thus, he had a compelling reason to deliver the check in 1980. Although the check was made at the beginning of the holiday season, the distractions of that season did not prevent Mr. Brodigan from delivering the check in 1980. Mr. McCormack did not cash the check until January 17, 1981, but that fact does not convince us that he did not receive the check in 1980. For these reasons, we have found that the December check was delivered to Mr. McCormack on December 24, 1980, and therefore, the amount thereof is includable in his gross income for 1980. Kahler v. Commissioner,18 T.C. 31. 34 (1952); Butler v. Commissioner,19 B.T.A. 718, 731 (1930). The petitioner contends that even if he received the $30,000 in 1980, it was not reportable by him until he earned it. The Commissioner contends that the application of the claim of right doctrine mandates the inclusion of the income in the year the petitioner received it. *20 Beginning with North American Oil v. Burnet,286 U.S. 417 (1932), a succession of cases has established the elements of the claim of right doctrine. The elements are: (1) receipt by the taxpayer of money or other property; (2) control by the taxpayer over the utilization and disposition of the received money or property; and (3) an assertion, by the taxpayer, of a claim of right or entitlement to receive the money or property. Dubroff, "The Claim of Right Doctrine," 40 Tax L. Rev. 729, 733 (1985). The doctrine applies to prepaid income received under the cash method of accounting; even if the income has not yet been fully earned, it must be reported in the year of receipt. Sec. 451(a); sec. 1.446-1(c)(1)(i), Income Tax Regs.; sec. 1.451-1(a), Income Tax Regs.; Schlude v. Commissioner,372 U.S. 128 (1963); American Automobile Ass'n v. United States,367 U.S. 687 (1961); Automobile Club v. Commissioner,353 U.S. 180 (1957); Phillips v. Commissioner,238 F.2d 473 (7th Cir. 1956), affg. 25 T.C. 767 (1956). The petitioner argues that Mr. Brodigan's option to discharge him for any or no cause, coupled with the agreement to refund, is a restriction on his use of the funds sufficient to *21 prevent the application of the claim of right doctrine. The petitioner characterizes this obligation to refund as definite, fixed, and unconditional. Mr. Brodigan testified that had the petitioner left his supervision, he (Mr. Brodigan) would have expected a rebate of some kind. The Commissioner characterizes the rebate agreement as a contingent liability which is insufficient to prevent the application of the claim of right doctrine. We agree with the Commissioner. In North American Oil v. Burnet, the Court stated: If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * * [286 U.S. at 424.] The phrase "without restriction as to its disposition" was interpreted bys the Supreme Court in Healy v. Commissioner,345 U.S. 278 (1953). In Healy, cash method taxpayers were officers and stockholders of closely held corporations. The taxpayers received salaries from these corporations and reported them as income. The Commissioner *22 disallowed the deductions, in part, on the ground that the salaries were unreasonable, and deficiencies were determined against the corporations. The Commissioner also determined deficiencies against the taxpayers on a transferee liability theory. The taxpayers argued that the salaries were not held under a claim or right, since they were subject to a legal restriction -- the claim of transferee liability. All the facts which gave rise to transferee liability were in existence at the end of the year of receipt. Nevertheless, the Court discounted the extent of the restriction, on the basis that even if the facts were in existence, there was no assurance that transferee liability would be asserted or found against the taxpayers. The Court held: There is no need to attempt to list hypothetical situations not before us which put such restrictions on use as to prevent the receipt under claim of right from giving rise to taxable income. But a potential or dormant restriction, such as here involved, which depends upon the future application of rules of law to present facts, is not a "restriction on use" within the meaning of North American Oil v. Burnet,supra. [345 U.S. at 284; emphasis *23 added.] In Bates Motor Transport Lines, Inc. v. Commissioner,200 F.2d 20 (7th Cir. 1952), affg. 17 T.C. 151 (1951), the taxpayer argued that the terms of its contract with the Federal Government imposed a sufficient "restriction on use." The taxpayer was a common carrier of freight. Under its contract, the General Accounting Office was required to examine the taxpayer's bills; if the charges exceeded certain standards, the carrier was required to refund the excess to the Federal Government. Under such procedure, the taxpayer had been required to make refunds. For the year at issue, the taxpayer estimated the amount it could be required to repay, and did not report this amount on its Federal income tax return. 200 F.2d at 22. The Tax Court held that the amounts which the taxpayer was later required to repay "never properly became a part of its gross income" and therefore exclusion of the refunded amount was proper. 17 T.C. at 159. The Court of Appeals observed that the taxpayer was entitled to "exclude from its taxable income only the amounts it was actually required to repay, not the much greater amounts it estimated that it might be called upon to repay." 200 F.2d at 22. The *24 Court of Appeals affirmed this Court's holding and stated: In the case at bar the obligation to repay and the person to whom the refund is to be made are definite and fixed, the only uncertainty arises from the amount of refund which was to be ascertained by the General Accounting Office on audit. The obligation to refund was contractual * * *. The amount which taxpayer * * * excluded from its income for the taxable years was confessedly a mere estimate. While it was obligated to repay some portion of the income, the amounts did not become known until later years. * * * The taxpayer was not entitled to exclude, in the taxable years in question, the arbitrary amounts which it then estimated it might have to repay some time in the future. [200 F.2d at 24.] Even a subsequent adjudication that money must be repaid does not relieve the taxpayer of the responsibility of reporting the money when received with a claim of right. Phillips v. Commissioner,238 F.2d 473 (7th Cir. 1956), affg. 25 T.C. 767 (1956). In Phillips, the taxpayer was an attorney who received contingent fees in two consecutive years as a result of a court award. During the second year, the judgment was reversed, *25 and the court ordered the award refunded. The attorney never actually returned any amount of the fees received, and spent virtually all of the fees to discharge personal obligations. The attorney failed to include any amount of the contingent fees in income for either year in which received. He argued that he had no claim of entitlement to the fees, as a result of the order to refund. The Court of Appeals affirmed this Court's ruling, saying: There can be no question but that the taxpayer received the fees * * * under a claim of right, and the fact that it was subsequently determined that the claim was ill founded is immaterial.* * * The record is devoid of any showing of a restriction upon his right to use such funds; in fact, the taxpayer testified that he was aware of no restriction on his right to use and spend the funds. [238 F.2d at 476.] In the present case, the petitioner received the $30,000 in 1980, with a claim of a right to it, and he was free to use the money as he saw fit. There was a contingent obligation that if he did not continue to work for Mr. Brodigan for the 2-year period, some of the money would have to be refunded. However, that contingency did not relieve *26 him of the obligation to report the income when received. The petitioner relies on Lashells' Estate v. Commissioner,208 F.2d 430 (6th Cir. 1953), revg. On this issue a Memorandum Opinion of this Court, Mutual Telephone Co. v. United States,204 F.2d 160 (9th Cir. 1953), and Commissioner v. Wilcox,327 U.S. 404 (1946). In Lashells' Estate, the Court of Appeals found that the taxpayer made no claim of right to the funds at issue; the taxpayer was merely a conduit. 208 F.2d at 435. The petitioner here makes no showing that he is a conduit; nor do we think the evidence could support such a finding. Mutual Telephone Co. is also distinguishable. There, the Court of Appeals held that the taxpayer did not have unrestricted disposition of the funds in issue, because the taxpayer was subject to the jurisdiction of a State governmental agency. 204 F.2d at 161. The facts found in Mutual Telephone Co. indicate that the funds at issue could only be disbursed with the approval of that agency. 204 F.2d at 161. Here, the petitioner was never subject to an order from any governmental agency with regard to these funds. Wilcox was overruled by James v. United States,366 U.S. 213 (1961). In James, *27 the Supreme Court applied North American Oil v. Burnet,supra, as part of its rationale for overruling Wilcox. 366 U.S. at 219-220. After reviewing the precedents, we hold that the claim of right doctrine operates to mandate that inclusion of the $30,000 in the petitioner's gross income in 1980. The third issue presented for our decision is whether the petitioner is liable for the salf-employment tax. The petitioner characterizes his relationship with Mr. Brodigan as that of employer/employee. The Commissioner contends that the petitioner was an independent contractor. Section 1401(a) and (b) imposes the tax "on the self-employment income of every individual." Section 1402(a) provides in pertinent part: (a) Net Earnings from Self-Employment. -- The term "net earnings from self-employment" means the gross income derived by an individual from any trade or business carried on by such individual * * *. Section 1402(c) provides in pertinent part: (c) Trade or Business. -- The term "trade or business", when used with reference to self-employment income or net earnings from self-employment, shall have the same meaning as when used in section 162 (relating to trade or business expenses), *28 except that such term shall not include -- * * * (2) the performance of service by an individual as an employee * * * Section 1402(d) provides: (d) Employee and Wages. -- The term "employee" and the term "wages" shall have the same meaning as when used in chapter 21 (sec. 3101 and following, relating to Federal Insurance Contributions Act). Sections 1.1402(c)-3 and 1.1402(d)-1 of the Income Tax Regulatioins refer to section 3121(d) and the regulations thereunder for a definition of the term "employee." Section 3121(d), in pertinent part, provides: (d) Employee. -- For purposes of this chapter, the term "employee" means -- * * * (2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee; * * * Section 31.3121(d)-1(c)(1), Employment Tax Regs., provides that the "usual common law rules" determine whether the "legal relationship of employer and employee" exists. Section 31.3121(d)-1(c)(2) of such regulations provides in part: (2) Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only *29 as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer * * * are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee under the usual common law rules. Individuals such as paysicians, lawyers, dentists, veterinarians, construction contractors, public stenographers, *30 and auctioneers, engaged in the pursuit of an independent trade, business, or profession, in which they offer their services to the public, are independent contractors and not employees. [Emphasis added.] The same tests are also set forth in sections 31.3306(i)-1(b) and 31.3401(c)-1(b) and (c), Employment Tax Regs. Whether the employment relationship exists is to be determined by examining the facts of each case. Secs. 31.3121(d)-1(c)(3), 31.3306(i)-1(c), 31.3401(c)-1(d), Employment Tax Regs.; Simpson v. Commissioner,64 T.C. 974, 984-985 (1975). The Commissioner's determination of deficiency is presumed correct. Welch v. Helvering,290 U.S. 111 (1933). The petitioner has the burden of producing "enough evidence to support a finding contrary to the respondent's determination." Rockwell v. Commissioner,512 F.2d 882, 885 (9th Cir. 1975), affg. a Memorandum Opinion of this Court. The petitioner has the additional burden of showing the merits of his claim by a preponderance of the evidence. Rockwell v. Commissioner,supra at 885. The petitioner proved, without contravention, that while performing legal services for Mr. Brodigan, Mr. Brodigan provided the work space, telephones, *31 supplies, secretarial services, and law library. Equally uncontroverted was the petitioner's testimony, corroborated by Mr. Brodigan, that the petitioner was engaged in the representation of Mr. Brodigan's clients in court and engaged in the usual interviewing, research, and writing tasks given to young associates. Mr. Brodigan testified on cross-examination that he did not check every assignment the petitioner performed, but he also testified that when he suggested changes to the petitioner's written work, those changes were made. The petitioner never entered his personal legal appearance; all appearances were recorded in Mr. Brodigan's name, and Mr. Brodigan collected all the fees. The petitioner was supervised by Mr. Brodigan, at least to some extent, and reported to Mr. Brodigan. Mr. Brodigan assigned the petitioner cases to handle.Mr. Brodigan testified, also, that the petitioner had independent authority to make decisions at trial and that he gave the petitioner some cases to handle exclusively, but on the record as a whole, we infer that the petitioner's work in court and in handling the cases had to be performed in accordance with Mr. Brodigan's general policies. Mr. *32 Brodigan had the right to fire the petitioner at any time. On these facts, we have concluded that Mr. Brodigan had: the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. * * * [Sec. 31.3121(d)-1(c)(2), Employment Tax Regs.] Consequently, we hold that the petitioner has carried his burden of proving that he was an employee of Mr. Brodigan, and therefore, he is not liable for the self-employment tax. The final issue we are called upon to decide is whether the addition to tax under section 6653(a) for negligence should be sustained. Section 6653(a) provides in part: If any part of any underpayment * * * of any tax * * * is due to negligence or intentional disregard of rules and regulations * * *, there shall be added to the tax an amount equal to 5 percent of the underpayment. The petitioner has the burden of proving that he is not liable for the addition to tax. Potito v. Commissioner,534 F.2d 49, 53 (5th Cir. 1976), affg. a Memorandum Opinion of this Court. The addition to tax has been sustained when the taxpayer failed to produce *33 any evidence showing that he was not liable for it. James v. Commissioner,53 T.C. 63, 70 (1969); Raily v. Commissioner,53 T.C. 8, 14 (1969). The addition has also been sustained when the evidence produced by the taxpayer was insufficient to prove a lack of negligence. Cates v. Commissioner,716 F.2d 1387, 1390 (11th Cir. 1983), affg. a Memorandum Opinion of this Court. The petitioner testified that he reported the income at issue by prorating it over the 2 years for which he contracted to perform services, at the rate of $288.46 per week. It is stipulated that the petitioner uses the cash method for reporting income. The evidence shows that Mr. Brodigan mentioned the possibility that the petitioner would have to report the entire $30,000 in 1980. The petitioner was an attorney, and he was aware that he might have to report the entire $30,000 in 1980. In view of the long line of cases holding that prepaid compensation is reportable when received, we cannot find his conduct to be reasonable, and we must sustain the Commissioner's determination of the addition to tax under section 6653(a). It is stipulated that the petitioner is entitled to income averaging for 1980. Accordingly, *34 Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.↩
2. There is some doubt as to whether Mr. Brodigan could have recovered any of his payment in the event that the contract had not been performed since the agreement was oral and was not to be performed within a year. Mass. Gan. Laws Ann. ch. 259, sec. 1, cl. 5 (West 1980); McMorrow v. Rodman Ford Sales, Inc.,462 F. Supp. 947 (D. Mass. 1979); Richard Tucker Associates, Inc. v. Smith,395 Mass. 648, 481 N.E. 2d 489↩ (1985). 3. The petitioner relies on Rev. Rul 68-377, 1968-1 C.V. 417, and Rev. Rul. 69-465, 1969-2 C.B. 27↩. However, such revenue rulings do not constitute legal authorities, and they are factually distinguishable.